# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

GINO CARLUCCI,                    )

                                       )

          Petitioner,         )     **CIVIL ACTION**

                                       )     **No. 16-CV-588-KHV**

v.                                  )

                                       )     **CRIMINAL ACTION**

UNITED STATES OF AMERICA,     )     **No. 10-464-01-KHV**

                                       )

          Respondent.       )

_____)

## <u>MEMORANDUM AND ORDER</u>

On July 25, 2011, a jury found petitioner guilty of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and willful filing of a false tax return in violation of 26 U.S.C. § 7206(1). <u>Jury Verdict</u> (Doc. #238 in Case No. 10-cr-464-KHV). On August 17, 2012, the Court, sitting by designation in the District of Arizona, sentenced petitioner to 188 months in prison. <u>Judgment In A Criminal Case</u> (Doc. #412 in Case No. 10-cr-464-KHV).

On March 2, 2016, petitioner filed a <u>Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside Or Correct Sentence By A Person In Federal Custody</u> (Doc. #1 in Case No. 16-cv-588, Doc. #477 in Case No. 10-cr-464-KHV). On May 4, 2017, the Honorable Michelle H. Burns issued a <u>Report And Recommendation</u> (Doc. #23) which recommended that the Court overrule petitioner's motion. This matter is before the Court on petitioner's objections to the <u>Report And Recommendation</u>. <u>See Movant's Objections To Proposed Report And Recommendation And Recommended Disposition</u> (Doc. #25) filed May 19, 2017. On December 27, 2017, the government responded to petitioner's objections. <u>Government's Response To Petitioner's Objections To Report And Recommendation</u> (Doc. #31). For reasons stated below, the Court overrules petitioner's objections and approves and adopts Judge Burns's recommendation. Accordingly, the Court overrules petitioner's Section 2255 motion.

**Factual And Procedural Background**

Because the Report And Recommendation summarizes petitioner's criminal activity and conviction in great detail, the Court provides an abbreviated overview of the factual and procedural history of this case. Doc. #23 at 2-11. In May of 2004, petitioner and Wayne Mounts began a scheme to defraud Joseph Flickinger. They targeted Flickinger because he had amassed more than $1 million in cash and assets through a ponzi scheme which defrauded many investors. Petitioner and Mounts met Flickinger and learned of his fortune through Robert Garback, a limo driver.

Petitioner and Mounts presented Flickinger with multiple fabricated investment opportunities. After some negotiation, Flickinger accepted the following agreement: he would help petitioner and Mounts pay a $200,000 deposit to the Securities and Exchange Commission ("SEC"). After they paid the deposit, the SEC would release $5.4 million of assets which the SEC had purportedly seized from petitioner. In turn, petitioner and Mounts would transfer Flickinger's ponzi scheme proceeds to an offshore bank to avoid government detection. Petitioner did not have any seized assets, owed no deposit fee to the SEC and did not intend to transfer Flickinger's funds offshore.

In late May of 2004, Flickinger, Garback and victims of Flickinger's ponzi scheme began transferring funds to the bank account of Associated Legal Mediation Services ("ALMS") – a shell corporation that petitioner and Mounts controlled. Flickinger and Garback also gave petitioner and Mounts two cars and two expensive watches to sell to help pay the SEC deposit. In late June of 2004, Flickinger and his ponzi scheme victims (at his direction) began wiring the remaining ponzi scheme proceeds to the corporate bank account. Flickinger believed that petitioner and Mounts would transfer these funds offshore. Flickinger also transferred his Ohio condominium to petitioner and Mounts, so they could sell it and move the proceeds offshore.

In late July of 2004, Flickinger completed his transfers to the ALMS account. Petitioner then

sent incriminating, anonymous fax messages to federal agents, hoping that they would arrest Flickinger – which they did. Around the same time, Mounts began withdrawing funds from the corporate account for personal use and that of petitioner. They used several tactics to avoid government detection, including funneling funds through petitioner's relatives, transferring assets to other shell corporations, fabricating loan documents and purchasing large assets such as boats. For example, Mounts wired funds to petitioner's father-in-law, who transferred money to petitioner's wife and bought a Scarab boat. Petitioner and Mounts forged names on the boat title, created a false document which stated that Flickinger transferred the boat to a fake corporation and stored it at an acquaintance's home. Petitioner did not report any of these proceeds to the Internal Revenue Service. In April of 2005, he reported $24,800 of business income on his 2004 tax return.

On April 8, 2010, a grand jury charged petitioner with conspiracy to commit money laundering (Count 1), conspiracy to defraud the United States (Count 2), willful filing of a false tax return (Count 3) and witness tampering (Count 4). Indictment (Doc. #1 in Case No. 10-cr-464-KHV). On July 25, 2011, the jury found petitioner guilty of Counts 1 through 3. Judgment (Doc. #412 in Case No. 10-cr-464-KHV). On August 17, 2012, the Court sentenced petitioner to 188 months in prison. Id. Petitioner appealed his conviction and sentence directly to the Ninth Circuit Court of Appeals, which affirmed.[1] United States v. Mounts, 584 F. App'x 482, 482-85 (9th Cir. 2014).

On March 2, 2016, petitioner filed a Motion Under 28 U.S.C. § 2255 (Doc. #1) with the aid of counsel, John D. Kirby. In his Section 2255 motion, petitioner asserts three grounds for relief:

_____

[1] Multiple attorneys represented petitioner. Petitioner initially retained Jason Lamm. Notice Of Appearance (Doc. #5 in Case No. 10-cr-464-KHV) filed April 13, 2010. On January 4, 2011, the Court appointed David Eisenberg as petitioner's counsel. Minute Entry (Doc. #119 in Case No. 10-cr-464-KHV). Eisenberg represented petitioner during trial. Eisenberg, Todd Nolan and Vicki Lopez served as co-counsel at sentencing. Report And Recommendation (Doc. #23) at 20, 31 n.6. The Nolan Law Firm represented petitioner on direct appeal.

-3-

(1) ineffective assistance of trial counsel, (2) ineffective assistance of appellate counsel and (3) prosecutorial misconduct. These claims include multiple sub-claims which the Court addresses in detail below. As noted, on May 4, 2017, Judge Burns issued a Report And Recommendation which recommended that the Court overrule petitioner's motion. Doc. #23. On May 19, 2017, petitioner filed his objection to the Report And Recommendation. Movant's Objections (Doc. #25). On November 30, 2017 the Court entered an Amended Order To Show Cause (Doc. #29) which directed the "government to show cause why the Court should not sustain Movant's Objections" because the government had not responded to them. On December 27, 2017, the government responded. Government's Response (Doc. #31).[2] This matter is before the Court on petitioner's objections to the Report And Recommendation. See Movant's Objections (Doc. #25).

### Analysis

**I.     Ineffective Assistance Of Trial Counsel**

First, petitioner asserts that trial counsel provided ineffective assistance. In particular, petitioner alleges that his attorneys provided ineffective assistance because they:

A. ineffectively argued a statute of limitations issue;

B. failed to challenge the source of government evidence;

---

[2]     On January 12, 2018, petitioner moved to strike the Government's Response (Doc. #31) pursuant to Rule 12, Fed. R. Civ. P. See Movant['s] Motion To Strike Respondent['s] Reply To Movant['s] Objections To The Magistrate['s] Report And Recommendation For Failure To Comply With The Court['s] Order To Show Cause (Doc. #32). Petitioner asserts that the Amended Order To Show Cause (Doc. #29) ordered the government to respond before December 24, 2017 and that the government did not comply with this deadline. Movant['s] Motion To Strike (Doc. #32) at 1-2.

The Amended Order To Show Cause (Doc. #29) ordered the government to respond before December 29, 2017 – not December 24. The Government complied with this deadline by filing its response on December 27, 2017. Government's Response (Doc. #31). Accordingly, the Court overrules petitioner's motion to strike.

C. had a personal interest conflict with him;

D. failed to interview and call the proper witnesses;

E. failed to properly rectify the issue of sleeping jurors;

F. failed to invoke the marital communications and adverse spousal testimony privileges;

G. failed to be present at every stage of trial;[3]

H. conceded guilt on two counts during closing argument;

I. failed to successfully argue that text messages should be excluded;

J. failed to object to the restitution order; and

K. failed to argue unfair sentence disparities among similarly-situated defendants.

Motion Under 28 U.S.C. § 2255 (Doc. #1) at 5-12.

To establish ineffective assistance, petitioner must show that counsel's (1) deficient performance (2) caused prejudice – a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). Petitioner must prove that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" to establish deficient performance. Id. at 687. In other words, petitioner must prove that counsel performed "below an objective standard of reasonableness." Id. at 688. The Court may determine the second element, prejudice, before analyzing counsel's performance. Cooper v. Calderon, 255 F.3d 1104, 1109 (9th Cir. 2001). If the Court determines that the alleged error did not prejudice petitioner, it does not need to consider counsel's performance. Id.

---

[3]    Petitioner raises this ground for relief in his Motion Under 28 U.S.C. § 2255, but his supporting brief does not provide any argument supporting this claim. Movant[']s Brief In Support Of Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct A Sentence (Doc. #2) filed March 2, 2016.

In her <u>Report And Recommendation</u>, Judge Burns notes that some of the foregoing claims of ineffective assistance are procedurally barred because petitioner did not raise them on direct appeal. Doc. #23 at 14-15 (citing <u>Bousely v. United States</u>, 523 U.S. 614, 621-22 (1998) (must show cause and prejudice to bring habeas claim not raised on direct appeal). Petitioner objects, arguing that procedural bars do not apply to ineffective assistance claims. <u>Movant's Objections</u> (Doc. #25) at 2-3.

Supreme Court precedent supports petitioner's objection. In <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003), the Supreme Court held that the procedural default rule which requires petitioners to directly appeal claims before raising them on collateral review does not apply to ineffective assistance claims. Further, the Ninth Circuit has stated that claims of ineffective assistance "are generally inappropriate on direct appeal." <u>See</u> <u>United States v. McKenna</u>, 327 F.3d 830, 845 (9th Cir. 2003); <u>see also</u> <u>United States v. Ross</u>, 206 F.3d 896, 900 (9th Cir. 2000). Thus, in light of <u>Massaro</u> and Ninth Circuit precedent, petitioner did not procedurally default any ineffective assistance claims by failing to raise them on direct appeal.

A.    <u>Statute Of Limitations Issue</u>

On January 4, 2011, District Judge Roslyn O. Silver denied petitioner's motion to dismiss Count 1 (conspiracy to commit money laundering) based on the statute of limitations. She reasoned as follows:

> [Petitioner] was indicted on April 8, 2010. Thus the conspiracy charge is timely provided [petitioner] acted in furtherance of the conspiracy after April 8, 2005. According to the indictment, [petitioner] filed a false tax return on April 12, 2005. The false tax return allegedly was in furtherance of the money laundering conspiracy. [Petitioner] also took steps after April 2005 to hide assets from the government, such as a boat and trailer. Given the date of these alleged actions, the conspiracy to commit money laundering count is timely.

<u>Order</u> (Doc. #120 in Case No. 10-cr-464) at 1. Petitioner generally asserts that his retained attorney, Jason Lamm, provided ineffective assistance when he failed to successfully argue that the Court should

have dismissed Count 1 because the statute of limitations had expired – i.e. more than five years had elapsed since his last overt act in furtherance of the money laundering conspiracy. Movant's Brief In Support (Doc. #2) at 3-13. In particular, petitioner asserts that counsel should have argued that (1) petitioner withdrew from the conspiracy before April of 2005; (2) under Grunewald v. United States, 353 U.S. 391, 401 (1957), acts of concealment "after the central criminal purposes of a conspiracy ha[s] been attained" do not constitute an overt acts in furtherance of the conspiracy; and (3) the law did not require petitioner's tax return to report illegally obtained funds. See id.

Judge Burns recommended that the Court overrule this claim because the omitted arguments for dismissal "fail[] factually and legally." Report And Recommendation (Doc. #23) at 17. Petitioner objects, asserting that Judge Burns "misunderstood the facts of this argument and relevant law pertaining to it." Movant's Objections (Doc. #25) at 3.

1.      Withdrawal from conspiracy

In December of 2004, petitioner pled guilty to misprision of felony in the District of Utah. See Doc. #2-1 at 43 (plea agreement); Report And Recommendation (Doc. #23) at 18. In conjunction with that plea, he made multiple proffers to the government. Id. Petitioner contends that because he entered into a proffer agreement concerning a fraud investigation in Utah, he withdrew from the money laundering conspiracy on February 17, 2005 – more than five years before the grand jury charged him with conspiracy to commit money laundering. See Movant's Brief In Support (Doc. #2) at 11.

Petitioner argues that pursuant to the proffer agreement, he disclosed an asset which he purchased in furtherance of the laundering scheme, i.e. the Scarab boat. Id. at 11. Petitioner's disclosure was that the Scarab boat was "unavailable," and the government did not recover the boat until nearly two years after petitioner's proffer. Report And Recommendation (Doc. #23) at 17. This trivial

disclosure – along with petitioner's proffer and cooperation in a separate investigation – do not suggest withdrawal from the overall money laundering conspiracy. See United States v. Lothian, 976 F.2d 1257, 1261 (9th Cir. 1992) (withdrawal requires disavowing conspiracy's goal, affirmative act defeating purpose of conspiracy or "definite, decisive, and positive step" showing disassociation from the conspiracy).

Further, petitioner did not withdraw from the conspiracy in February of 2005 because after his proffer, he continued to conceal assets and funds from the government. Among other things, he filed a false tax return in April of 2005. As shown, petitioner's first suggested argument lacks merit. Accordingly, counsel did not perform deficiently or prejudice petitioner by failing to make this meritless argument.

### 2. Concealment

Next, petitioner claims that counsel provided ineffective assistance because he failed to argue that under Grunewald, 353 U.S. at 401, post-conspiracy acts of concealment – such as filing a false tax return – do not extend the statute of limitations. This argument fails because it mischaracterizes the crime charged in the indictment. Petitioner was not charged with the underlying scheme to defraud but was charged with conspiring to launder the proceeds of that scheme in various manners, including "using friends and associates to hide asset(s) from the government." Indictment (Doc. #1 in Case No. 10-cr-464), ¶ 17(d); see Government's Answer In Opposition To Petitioner's Motion To Vacate, Set Aside, Or Correct Sentence Pursuant To 28 U.S.C. § 2255 (Doc. #9) filed July 5, 2016 at 27. In other words, the charged conspiracy consisted entirely of laundering and concealing funds from the government. Because the crime "that [wa]s the object of the conspiracy ha[d] the intent to conceal as an element," any act of concealment furthered the conspiracy and extended the statute of limitations. See United States v. Upton, 559 F.3d 3, 13 (1st Cir. 2009) (acts of concealment that

facilitate central aim of conspiracy are in furtherance of conspiracy).  <u>Grunewald's</u> holding – that post-conspiracy concealment does not further the conspiracy – does not apply.  353 U.S. at 401-02.  Thus, petitioner's second argument fails because he concealed the Scarab boat and filed a false tax return within five years of the charge.  Because petitioner fails to show that this <u>Grunewald</u> argument could have changed the outcome of his motion to dismiss based on the period of limitations, counsel did not provide ineffective assistance by failing to raise it.

        3.        <u>Tax return</u>

Finally, petitioner asserts that his 2004 tax return did not need to include illegally obtained income because the government subsequently required him to forfeit these assets and under 21 U.S.C. § 853(c), he retained no right, title or interest in forfeited assets.  <u>Movant's Brief In Support</u> (Doc. #2) at 8.  Accordingly, petitioner argues that filing his tax return in April of 2005 cannot constitute an overt act in furtherance of the conspiracy.  <u>Id.</u>

This argument is facially invalid.  As stated in the <u>Report And Recommendation</u>, "[i]llegal gain as well as legal gain constitutes taxable income."  Doc. #23 at 17 (quoting <u>James v. United States,</u> 366 U.S. 213, 219 (1961)).  Thus, for substantially the reasons stated in the <u>Report And Recommendation</u>, counsel did not provide ineffective assistance by failing to raise this argument.  Doc. #23 at 17-18.

Because all of petitioner's suggested arguments with regard to the statute of limitations lack merit, he has not demonstrated deficient performance or prejudice.  Accordingly, the Court overrules petitioner's first claim of ineffective assistance.

        B.        <u>Source Of Government Evidence</u>

Petitioner asserts that Lamm and David Eisenberg, who began representing petitioner in January of 2011, provided ineffective assistance by failing to request a hearing under <u>Kastigar v. United States</u>, 406 U.S. 441 (1972), to challenge the source of government evidence.  <u>Movant's Objections</u>

(Doc. #25) at 5-6. In particular, petitioner claims that because of his cooperation in Utah, the government granted him immunity from further prosecution based on information he provided and then improperly used this information against him in this case in Arizona. Movant's Brief In Support (Doc. #2) at 15.

Judge Burns recommended that the Court overrule this claim because petitioner fails to demonstrate that his attorneys' inaction resulted in prejudice. Report And Recommendation (Doc. #23) at 18-19. Further, the Court and Ninth Circuit found that petitioner did not factually establish that the government ever promised him immunity. Id. (citing Order (Doc. #120 in Case No. 10-cr-464) and Mounts, 584 F. App'x at 483-84). Thus, if counsel had requested a Kastigar hearing, the Court would have denied the motion because the government never promised immunity. Petitioner argues that at trial, the Court "barely brushed over" whether he had immunity and the Ninth Circuit similarly erred in its ruling. Movant's Objections (Doc. #25) at 5-6.

Petitioner's vague assertion does not raise a material factual question concerning whether the government promised him immunity. Order (Doc. #120 in Case No. 10-cr-464-KHV). The Court had already rejected the factual basis for a Kastigar hearing, and counsel did not perform deficiently in failing to seek one. For substantially the reasons stated in the Report And Recommendation, the Court overrules petitioner's claim that counsel were ineffective in failing to challenge the source of government evidence. Doc. #23 at 18-19.

C.        Personal Interest Conflict

Petitioner argues that Eisenberg provided ineffective assistance because his concern about a potential bar complaint or habeas claim created a personal interest conflict during petitioner's sentencing. Movant's Brief In Support (Doc. #2) at 29-45. Judge Burns recommended that the Court overrule this claim because petitioner does not establish prejudice and Eisenberg did not divulge

-10-

privileged information. <u>Report And Recommendation</u> (Doc. #23) at 21-22. Petitioner objects that Judge Burns focused on whether Eisenberg divulged privileged information instead of whether he had a personal interest conflict. <u>Movant's Objections</u> (Doc. #25) at 6-8.

Petitioner falsely asserts that his original claim did not, partly, rely on divulgence of privileged information. <u>See</u> <u>Movant's Brief In Support</u> (Doc. #2) at 45 ("Eisenberg continued to violate the attorney client privilege on several occasions"). To prove ineffective assistance based on a conflict of interest, petitioner must establish "(i) that counsel actively represented conflicting interests, and (ii) that the actual conflict adversely affected counsel's performance." <u>United States v. Baker</u>, 256 F.3d 855, 860 (9th Cir. 2001); <u>see</u> <u>Earp v. Ornoski</u>, 431 F.3d 1158, 1183 (9th Cir. 2005). Petitioner does not meet either requirement. First, petitioner's claim – that Eisenberg "was focused on his well[-]being, not [petitioner's]" – at best shows "the mere possibility of [a] conflict," not an actual conflict. <u>Baker</u>, 256 F.3d at 860. Second, petitioner does not explain how Eisenberg's alleged conflict adversely affected his performance. In fact, petitioner alleges that the conflict occurred when Eisenberg attempted to withdraw from the case. <u>Movant's Brief In Support</u> (Doc. #2) at 41. Petitioner does not indicate how Eisenberg's attempt to withdraw, which the Court rejected, resulted in prejudice. Thus, the Court overrules petitioner's claim that a conflict of interest rendered Eisenberg's assistance ineffective.

D.       <u>Interview And Call Witnesses</u>

Petitioner asserts that Eisenberg provided ineffective assistance because he did not adequately investigate the case or present any witness testimony at trial. <u>Movant's Brief In Support</u> (Doc. #2) at 45-66. Petitioner's underlying claim is fundamentally incorrect because Eisenberg presented the testimony of Brandon Valero on petitioner's behalf at trial. <u>Government's Response</u> (Doc. #31) at 4. Petitioner identifies ten additional witnesses, however, that Eisenberg knew of but did not call to testify. <u>See</u> <u>id.</u> Judge Burns recommended that the Court overrule this claim. <u>Report And Recommendation</u> (Doc. #23)

at 22-26. After discussing petitioner's claim with respect to each potential witness, the Report And Recommendation generally concluded that petitioner did not establish what exculpatory testimony each witness would have provided or that such testimony "would have made a difference in the outcome of his trial or sentencing." See id. Petitioner objects, stating as follows:

> If [petitioner] can demonstrate that Joseph Flickinger and Rob Garback in fact concocted their story, as [petitioner] maintains his innocence, the introduction of testimony from all of the named un-interviewed witnesses as well as the impeachment evidence that would have been obtained from a handwriting specialist and an investigator regarding various items including the promissory notes and alleged power of attorney could have disproved the Government[']s theory and changed the outcome of the trial . . .

Movant's Objections (Doc. #25) at 9-10. Petitioner also requests an evidentiary hearing on this claim because he asserts that the record "certainly cannot justify Eisenberg's failure to investigate in any manner the witnesses that were provided to him." Id. at 9.

When analyzing whether trial counsel adequately investigated the underlying facts and law of a case, the Court grants "a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. The Ninth Circuit has characterized counsel's choice whether to call available witnesses as "a strategic decision." Hall v. Lewis, 99 F. App'x 829, 831 (9th Cir. 2004); see also Denham v. Deeds, 954 F.2d 1501, 1505 (9th Cir. 1992). Under the Strickland framework, the Court grants great deference to strategic decisions of trial counsel. 466 U.S. at 690-91. But see United States v. Span, 75 F.3d 1383, 1389 (9th Cir. 1996) (label of "trial strategy" does not automatically immunize attorney's performance from Sixth Amendment challenges).

Here, petitioner fails to demonstrate that Eisenberg performed deficiently by failing to call the suggested witnesses.[4] The omitted testimony would have impeached the character of government

---

[4] "[A] petition may be dismissed without a hearing only when it consists solely of conclusory, unsworn statements unsupported by any proof or offer thereof." Phillips v. Woodford, 267

(continued...)

witnesses or directly contradicted their testimony. See Movant's Brief In Support (Doc. #2) at 45-66.

Eisenberg attempted to accomplish these goals, however, through cross-examination. Counsel's

decision to focus on impeachment through cross-examination or presentation of defense evidence – or

both – represents a tactical decision "reflecting [their] skill and judgment." Denham, 954 F.2d at 1505.

Even though specific instances of Eisenberg's cross-examination left petitioner dissatisfied, he has not

shown that counsel's efforts were outside the "wide range of reasonable professional assistance."

Strickland, 466 U.S. at 689.

Further, petitioner does not establish prejudice. Even if the witnesses had testified, they would

have primarily challenged the government's evidence on collateral matters. For example, petitioner

alleges that one witness would have contradicted government testimony that "Scarlet Kitten" – the name

written on the Scarab boat – was a promotions company, when petitioner alleges it was a porn company.

See Movant's Brief In Support (Doc. #2) at 49. Another uncalled witness would have testified about

the whereabouts of watches that petitioner allegedly stole. Id. at 47. Petitioner does not demonstrate

that detailed testimony concerning trivial aspects of his money laundering scheme and Flickinger's fraud

scheme create a reasonable probability that the jury would have returned a different verdict on any

count. As shown, Eisenberg did not perform deficiently or prejudice petitioner by failing to call these

witnesses. Thus, the Court overrules this claim.

E.      Rectify Issue Of Sleeping Jurors

At trial, the Court notified counsel that certain jurors had fallen asleep while the government was

---

[4](...continued)

F.3d 966, 973 (9th Cir. 2001). Petitioner provides no affidavits or reliable proof to support his allegations of how each potential witness would have testified. Further, the exhibits to Movant's Brief In Support (Doc. #2) do not support his claim that Eisenberg failed to investigate or contact any of the witnesses. Because petitioner's claim relies on unsupported accusations, an evidentiary hearing is not necessary to resolve it.

-13-

presenting its case. <u>Movant's Brief In Support</u> (Doc. #2) at 66-68. When the Court proposed that it could designate these jurors as alternates, Eisenberg and counsel for co-defendant Mounts objected, believing that the jurors had not missed any critical testimony. <u>Report And Recommendation</u> (Doc. #23) at 27-28. When the Court reported a second instance of sleeping jurors, Eisenberg did not object or request an investigatory hearing. <u>Movant's Brief In Support</u> (Doc. #2) at 69. On appeal, the Ninth Circuit held that petitioner waived issues concerning the Court's proposed solution of designating sleeping jurors as alternates. <u>Mounts</u>, 584 F. App'x at 483. Further, it held that the Court did not have a "clear or obvious" obligation to hold an investigative hearing or take alternative remedial measures after subsequent reports of sleeping jurors. <u>Id.</u>

Petitioner argues that Eisenberg provided ineffective assistance in (1) objecting to the Court's proposal to designate sleeping jurors as alternates and (2) failing to object or request a hearing when notified for the second time that jurors had been sleeping. <u>Movant's Brief In Support</u> (Doc. #2) at 66-71. Judge Burns recommended that the Court overrule this claim because Eisenberg's actions did not cause prejudice. <u>Report And Recommendation</u> (Doc. #23) at 27-28. The <u>Report And Recommendation</u> also noted that Eisenberg's response constituted "sound trial strategy" because the jurors slept during the presentation of the government's case. <u>Id.</u> at 27. Petitioner objects that (1) the <u>Report And Recommendation</u> (Doc. #23) did not address counsel's failure to object after the second report of sleeping jurors and (2) counsel's actions resulted in prejudice because jurors missed "key testimony" while sleeping during cross-examination of government witnesses. <u>Movant's Objections</u> (Doc. #25) at 10.

Petitioner's first objection lacks merit. Petitioner suggests that Eisenberg provided ineffective assistance because he failed to object or request an investigatory hearing in response to the second report of sleeping jurors. <u>Movant's Brief In Support</u> (Doc. #2) at 66-71. The <u>Report And Recommendation</u>

addresses this claim through multiple references to Eisenberg's "failure to request a hearing." <u>See</u> Doc. #23 at 27-28 (finding failure to request hearing did not result in prejudice); <u>see</u> <u>Mounts</u>, 584 F. App'x at 483 (discussing investigative hearing in response to second notice about sleeping jurors).

Petitioner's objection that jurors missing "key testimony" caused prejudice also falls short. <u>Movant's Objections</u> (Doc. #25) at 10. To prove prejudice, petitioner must show a "reasonable probability" – not "the mere possibility" – that counsel's actions affected the outcome of his proceedings. <u>Correll v. Ryan</u>, 539 F.3d 938, 961 (9th Cir. 1987). His speculative assertion that "sleeping jurors <u>could have</u> missed key testimony" – without identifying what specific testimony the jurors missed – does not meet this burden. <u>Movant's Objections</u> (Doc. #25) at 10 (emphasis added). Further, even if Eisenberg requested an investigative hearing concerning sleeping jurors, the Court retained "considerable discretion" over the issue and could have denied counsel's request. <u>United States v. Barrett</u>, 703 F.2d 1076, 1083 (9th Cir. 1983); <u>United States v. Springfield</u>, 829 F.2d 860, 864 (9th Cir. 1987) (new trial only necessary when Fifth or Sixth Amendment violation), <u>overruled on other grounds by</u> <u>United States v. Benally</u>, 843 F.3d 350 (9th Cir. 2016). Thus, for reasons stated above and reasons in the <u>Recommendation And Report</u>, the Court overrules the claim that counsel was ineffective in responding to the issue of sleeping jurors. Doc. #23 at 27-28.

F.     <u>Marital Communications And Adverse Spousal Testimony Privileges</u>

Petitioner contends that Eisenberg provided ineffective assistance because he allowed petitioner's wife to testify and conceded that petitioner could not assert the marital communications or adverse spousal testimony privilege. <u>Movant's Brief In Support</u> (Doc. #2) at 72-77. Judge Burns recommended that the Court overrule this claim because (1) only the testifying spouse can invoke the adverse spousal testimony privilege; (2) counsel did not waive the marital communications privilege; and (3) testimony by petitioner's wife did not involve marital communications. <u>Report And</u>

Recommendation (Doc. #23) at 28-29. Petitioner objects to this recommendation by restating his position that "the privilege" does not belong exclusively to the testifying spouse. Movant's Objections (Doc. #25) at 11.

Petitioner fails to distinguish between the adverse spousal testimony privilege and the marital communications privilege. Only the testifying spouse can assert the adverse spousal testimony privilege. Trammel v. United States, 445 U.S. 40, 53 (1980). Eisenberg had no legal basis to assert it and did not perform deficiently in failing to do so. Either spouse may invoke the marital communications privilege, but petitioner has not identified any testimony from his wife that (1) fits within this privilege and (2) prejudiced him. Thus, for reasons stated above and in the Report And Recommendation, the Court overrules petitioner's claim that counsel was ineffective for failing to assert the marital communications and adverse spousal testimony privileges. Doc. #23 at 28-29.

G.     Presence At Every Stage Of Trial

Petitioner asserts that Eisenberg provided ineffective assistance because he failed to "enforce the right to be present at every stage of the trial." Motion Under 28 U.S.C. § 2255 (Doc. #1) at 9. In particular, petitioner asserts that the government improperly influenced Flickinger during a trial recess and Eisenberg did nothing to remedy this prosecutorial misconduct. Id. Judge Burns recommended that the Court overrule this claim because "[petitioner] provides no support for his factual assertions and provides no authority for his argument that attorneys are forbidden from conferring with witnesses during trial." Report And Recommendation (Doc. #23) at 29-30. In his objection, petitioner does not provide facts or legal authority to support his claim. See Movant's Objections (Doc. #25) at 11-12. Thus, for substantially the reasons stated in the Report And Recommendation, the Court overrules this claim.

H.  Closing Argument

Petitioner argues that Eisenberg provided ineffective assistance because during closing argument, he conceded guilt on Count 2 (conspiracy to defraud the United States) and Count 3 (filing false tax return).  Movant's Brief In Support (Doc. #2) at 77-82.  Judge Burns recommended that the Court overrule this claim because

> [Petitioner] fails to demonstrate that Mr. Eisenberg's conduct was not part of a strategic decision to detract jurors from the more serious counts, conspiracy to commit money laundering and witness tampering, both of which carried a maximum sentence of 20 years.  The maximum sentence on count two, the conspiracy to defraud count, was 5 years, and on count 3, the tax count, was 3 years.

Report And Recommendation (Doc. #23) at 30.  Judge Burns also noted that Eisenberg subsequently stated that petitioner was "okay with" conceding guilt on Counts 2 and 3.  Id. (quoting Transcript Of Proceedings (Doc. #363 in Case No. 10-cr-464-KHV) filed April 24, 2012 at 104).  Petitioner objects, claiming that Eisenberg did not receive his consent and the concessions resulted in prejudice.  Movant's Objections (Doc. #25) at 12-13.

Counsel's failure to obtain a client's consent before conceding guilt on one of multiple charges in closing argument does not create a presumption of prejudice.  United States v. Thomas, 417 F.3d 1053, 1058-59 (9th Cir. 2005).  In fact, the Ninth Circuit has stated that "a trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt of one of several charges."  United States v. Swanson, 943 F.2d 1070, 1075-76 (9th Cir. 1991).  Accordingly, even if the Court assumes that Eisenberg did not receive his client's consent, petitioner still must establish prejudice.

Petitioner asserts that Eisenberg's closing argument prejudiced him because the government argued that the concessions meant the jury should also return a guilty verdict on Count 1 (conspiracy to commit money laundering).  Movant's Objections (Doc. #25) at 13.  The record belies petitioner's

assertion. In closing, the government did not argue that Eisenberg's concession should cause the jury to find petitioner guilty of Count 1. Transcript Of Proceedings (Doc. #363 in Case No. 10-cr-464-KHV) at 88-93. Rather, the government asserted that it had presented overwhelming evidence of guilt on Count 1 and discussed specific instances of money laundering. Id. at 89-93; see also Transcript Of Proceedings (Sentencing) (Doc. #447 in Case No. 10-cr-464-KHV) filed April 12, 2013 at 68 (court noted "evidence was overwhelming on the issue of guilt"). Thus, because petitioner has not established prejudice, the Court overrules this claim of ineffective assistance. Doc. #23 at 30.

     I.      Text Messages

Petitioner argues that Eisenberg provided ineffective assistance because he failed to successfully exclude from evidence certain text messages between petitioner and Garback. Movant's Brief In Support (Doc. #2) at 82-85. Petitioner asserts that Eisenberg should have moved to exclude the messages because Garback admitted that he deleted many texts and the texts could have been "spoofed," i.e. sent by someone other than petitioner even though they appeared to be sent from petitioner's number. Id. at 82-83.[5] Judge Burns recommended that the Court overrule this claim because petitioner "fails to demonstrate that Mr. Eisenberg was ineffective with respect to the admission of the text messages, or that even if his performance was ineffective, [petitioner] was prejudiced." Report And Recommendation (Doc. #23) at 31. Petitioner objects that the Report And Recommendation incorrectly asserts that the record does not support his claim that Garback "spoofed" the text messages. Movant's

---

[5]      To the extent petitioner asserts that admission of the text messages violated his Sixth Amendment Confrontation Clause rights, his claim is procedurally barred. See Movant's Brief In Support (Doc. #2) at 84; see also Movant's Objections (Doc. #25) at 13-14 (asserting he is entitled to relief pursuant to cases discussing Confrontation Clause). The Ninth Circuit rejected this claim on direct appeal. See Mounts, 584 F. App'x at 484. As discussed below, "federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal." Foster v. Chatman, 136 S. Ct. 1737, 1758 (2016) (Alito, J., Concurring); see infra Section III.

<u>Objections</u> (Doc. #25) at 13-14.

Regardless whether the record supports petitioner's contention that the texts were spoofed, he fails to establish that Eisenberg's failure to exclude the messages caused prejudice. Petitioner does not show that the text messages had a pronounced effect on the jury's verdict. Absent argument to the contrary, the Court presumes that the text messages did not have a material effect on the outcome of the proceedings because "evidence was overwhelming on the issue of guilt." <u>Transcript Of Proceedings (Sentencing)</u> (Doc. #447 in Case No. 10-cr-464-KHV) at 68. Thus, petitioner fails to demonstrate a reasonable probability that the result of the proceedings would have differed had counsel successfully excluded the text messages. Because petitioner does not establish prejudice, the Court overrules this claim of ineffective assistance.

J.     <u>Restitution Order</u>

Pursuant to the Mandatory Victims Restitution Act ("MVRA"), the Court ordered that petitioner, joint and severally with Mounts and Flickinger, pay $672,813 in restitution to the victims of Flickinger's original fraud scheme. Petitioner argues that Eisenberg and Vicki Lopez, co-counsel at sentencing, provided ineffective assistance because they did not object to this restitution order. <u>Movant's Brief In Support</u> (Doc. #2) at 85-88. Judge Burns recommended that the Court overrule this claim because (1) petitioner's crimes directly related to the loss of Flickinger's victims and (2) no prejudice resulted. <u>Report And Recommendation</u> (Doc. #23) at 32. Petitioner objects, arguing that he suffered prejudice, namely "an additional restitution amount of $672,813.00." <u>Movant's Objections</u> (Doc. #25) at 14.

In <u>United States v. Thiele</u>, 314 F.3d 399, 401-02 (9th Cir. 2002), the Ninth Circuit held that a petitioner "cannot collaterally attack his restitution order in a § 2255 motion" because such attacks do not seek relief from custody. Under <u>Thiele</u>, petitioner cannot challenge his restitution order through an ineffective assistance claim in Section 2255 motion. Thus, the Court denies relief on this ground. <u>Id.</u>

-19-

K.    Unfair Sentence Disparity

Finally, petitioner asserts that Eisenberg provided ineffective assistance because he did not effectively argue that petitioner received an unfair sentence compared to his similarly-situated co-defendant Flickinger. Movant's Brief In Support (Doc. #2) at 89-91. Judge Burns recommended that the Court overrule this claim because (1) at sentencing, the Court found that "Flickinger and [petitioner] stand in dramatically different circumstances in terms of their role in this case" and (2) petitioner does not demonstrate how Eisenberg performed deficiently. Report And Recommendation (Doc. #23) at 33. Petitioner objects that counsel failed to cite supporting case law at sentencing when he argued that there was an unwarranted disparity between petitioner's sentence and that of Flickinger. Movant's Objections (Doc. #25) at 14.

Even if the Court presumes that Eisenberg failed to supplement his argument with proper legal support, petitioner fails to establish the factual predicate for his claim, i.e. that Flickinger and he were "similarly situated." Petitioner fails to rebut the Court's finding – which the Ninth Circuit affirmed – that the defendants were "in dramatically different circumstances." Mounts, 584 F. App'x at 486. Thus, the Court overrules this claim.

II.    **Ineffective Assistance of Appellate Counsel**

Courts analyze claims of ineffective assistance of appellate counsel under the familiar Strickland framework, which requires petitioner to show deficient performance and prejudice. Moormann v. Ryan, 628 F.3d 1102, 1106 (9th Cir. 2010). Petitioner asserts that appellate counsel – Cari Nolan – provided ineffective assistance because she (a) did not adequately communicate with petitioner before filing her opening brief; (b) made "incorrect and incomplete" arguments; and (c) failed to raise multiple claims

on appeal.[6] Movant's Brief In Support (Doc. #2) at 113-20.

A. Failure To Communicate

Petitioner asserts that appellate counsel provided ineffective assistance because she did not tell him which issues she planned to raise in the opening brief and did not respond to letters and calls after she filed the brief. Movant's Brief In Support (Doc. #2) at 113-20. Judge Burns recommended that the Court overrule this claim because petitioner's letters were sent after she filed the opening brief, and counsel could not have incorporated petitioner's notes in her briefing. Report And Recommendation (Doc. #23) at 34-35. Further, petitioner fails to show how this lack of communication resulted in prejudice because "nothing in [the] letters [] establishes that [petitioner] was in possession of issues or facts that appellate counsel should have raised." Id. at 35. Petitioner objects that he sent some letters before counsel filed the opening brief. Movant's Objections (Doc. #25) at 17-18.

Petitioner fails to factually support his objection. In fact, the opening appellate brief predates all of the letters attached to Movant's Brief In Support of his Section 2255 petition. See Doc. #2-1 Ex. S at 165-87. Thus, for reasons stated in the Report And Recommendation, the Court overrules this claim. Doc. #23 at 34-35.

B. Ineffective Arguments

Petitioner argues that appellate counsel provided ineffective assistance because she did not amend her briefs after petitioner identified issues with certain arguments and did not review relevant transcripts to prepare arguments. Movant's Brief In Support (Doc. #2) at 115-20. Petitioner maintains that her deficient performance resulted in inadequate arguments concerning his immunity and the statute of limitations. Id. Judge Burns recommended that the Court overrule this claim because "[petitioner]

---

[6]     Although petitioner presents this as one claim of ineffective assistance, the Court analyzes each claim individually below. Movant's Brief In Support (Doc. #2) at 113-120.

fails to identify any facts or law that should have been incorporated into the issues raised, or show that appellate counsel was ineffective in presenting or arguing the claims." Report And Recommendation (Doc. #23) at 35. In his objection, petitioner argues that his "letters clearly point out several relevant issues." Movant's Objections (Doc. #25) at 17.

Petitioner's vague objection does not identify deficiencies in appellate counsel's argument. The Court has already rejected the very arguments that petitioner's letters suggested. Compare Movant's Brief In Support (Doc. #2) at 115 (discussing argument that petitioner withdrew from conspiracy), with supra Section I.A.1. Failure to raise these claims did not result in prejudice. Thus, for reasons stated above and in the Report And Recommendation, the Court overrules this claim. Doc. #23 at 35.

C.      Failure To Raise Issues

Petitioner asserts that appellate counsel provided ineffective assistance because she failed to raise the following issues on appeal: (1) trial counsel's failure to request a Kastigar hearing; (2) the government's discussion with a witness during trial recess; and (3) trial counsel's concession of guilt during closing argument. See Movant's Brief In Support (Doc. #2) at 113-20. Judge Burns recommended that the Court overrule these claims because petitioner has not demonstrated prejudice. Report And Recommendation (Doc. #23) at 35. Presumably, petitioner's objection that his "letters point out several relevant issues" extends to this claim. Movant's Objections (Doc. #25) at 17.

When claiming ineffective assistance for failure to raise a claim on appeal, petitioner must prove (1) that "counsel acted unreasonably in failing to discover and brief a merit-worthy issue" and (2) a reasonable probability that but for counsel's failure to raise the issue, the appeal would have resulted in a reversal of his conviction. Moormann, 628 F.3d at 1106. When assessing the merits of such a claim, the Court must "look to the merits of the omitted issue." Hooks v. Ward, 184 F.3d 1206, 1221 (10th Cir. 1999). Petitioner's claim does not establish prejudice because the Court has rejected each of

the omitted claims. Accordingly, even if counsel had included the claims, petitioner's conviction would not have been reversed on appeal. Thus, the Court overrules this clam.

## III.     Prosecutorial Misconduct

Petitioner asserts that the government engaged in prosecutorial misconduct because it (1) used petitioner's prior proffer statements as evidence; (2) improperly presented evidence through a summary witness; (3) improperly presented facts not in evidence during closing argument; (4) failed to grant witness Valero immunity; and (5) used perjured testimony. Movant's Brief In Support (Doc. #2) at 91-112. Petitioner only raised one of these prosecutorial misconduct claims on direct appeal. Appellant's Opening Brief On Appeal, 2013 WL 5880723 at *29, United States v. Carlucci (Oct. 25, 2013) (government misrepresented intent to use information that petitioner provided in Utah investigation at trial in Arizona). Judge Burns recommended that the Court overrule these claims as procedurally defaulted. Recommendation And Report (Doc. #23) at 34. Although petitioner's objection largely ignores the procedural default issue, he argues that ineffective assistance by appellate counsel caused the claims to be omitted on direct appeal. Movant's Objections (Doc. #25) at 15.

Absent a showing of cause and prejudice or actual innocence, petitioner cannot bring a Section 2255 claim that he did not raise on direct appeal. United States v. Frady, 456 U.S. 152, 164-168 (1982); Bousley, 523 U.S. at 623. To show cause, petitioner must demonstrate that "some objective factor external to the defense" – such as ineffective assistance of counsel – prevented him from raising the claim on appeal. Murray v. Carrier, 477 U.S. 478, 488 (1986).

While ineffective assistance may constitute cause to excuse a procedural default, as explained above, petitioner fails to prove ineffective assistance by appellate counsel. See supra Part II. Therefore, petitioner does not excuse his procedural defaults and for the reasons stated in the Report And Recommendation (Doc. #23), the Court overrules the prosecutorial misconduct claims that petitioner

failed to bring on direct appeal.

To the extent petitioner's appeal asserted that the government violated his prior proffer agreements, his attempt to raise the same claim in his Section 2255 motion also fails. "[A]s a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal." Foster, 136 S. Ct. at 1758; Paige v. United States, 456 F.2d 1278, 1279 (9th Cir. 1972) (per curiam); United States v. Castellano, 75 F. App'x 629, 630 (9th Cir. 2003). If petitioner demonstrates an intervening change in applicable law or that denying his claim would result in a manifest injustice, the Court can hear a claim disposed of on direct appeal. See Davis v. United States, 417 U.S. 333, 342 (1974); Walter v. United States, 969 F.2d 814, 816-17 (9th Cir. 1992). Petitioner fails to assert either exception to the procedural bar. Thus, to the extent petitioner raised this claim on direct appeal, the Court overrules it in the context of petitioner's Section 2255 motion.

## Conclusion

The files and records in this case conclusively show that petitioner is not entitled to relief. Accordingly, no evidentiary hearing or government response is required. See 28 U.S.C. § 2255; Phillips, 267 F.3d at 973 (no evidentiary hearing when claims consist of conclusory statements unsupported by proof); United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996) (no hearing when petitioner's allegations viewed against record fail to state claim); Baumann v. United States, 692 F.2d 565, 571 (9th Cir. 1982).

## Certificate Of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a

constitutional right. 28 U.S.C. § 2253(c)(2).[7] To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). For reasons stated above, the Court finds that petitioner has not satisfied this standard. The Court therefore denies a certificate of appealability as to its ruling on petitioner's Section 2255 motion.

IT IS THEREFORE ORDERED that petitioner's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside Or Correct Sentence By A Person In Federal Custody (Doc. #1 in Case No. 16-cv-588, Doc. #477 in Case No. 10-cr-464-KHV) filed March 2, 2016 is OVERRULED.

IT IS FURTHER ORDERED that a certificate of appealability as to the ruling on petitioner's Section 2255 motion is DENIED.

IT IS FURTHER ORDERED that Movant[']s Motion To Strike Respondent[']s Reply To Movant[']s Objections To The Magistrate[']s Report And Recommendation For Failure To Comply With The Court[']s Order To Show Cause (Doc. #32) filed January 12, 2018 is OVERRULED.

Dated this 4th day of April, 2018 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

---

[7]    The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).